480 F.2d 504
 UNITED STATES of America, Plaintiff-Appellee,
v.
Peter BLACK, Defendant-Appellant.
 No. 72-1906.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 6, 1973.
Decided June 15, 1973.
 
 George B. Fleshman (Court Appointed), Ashland, Ky., for defendant-appellant.
 Eldon L. Webb, Lexington, Ky., for plaintiff-appellee; Eugene E. Siler, Jr., U. S. Atty., James F. Cook, Asst. U. S. Atty., Lexington, Ky., on brief.
 Before PHILLIPS, Chief Judge, LIVELY, Circuit Judge, and YOUNG, District Judge.*
 PHILLIPS, Chief Judge.
 
 
 1
 Appellant seeks reversal of his conviction under a two-count indictment for falsifying information in connection with the acquisition of a firearm and illegal possession of a firearm. 18 U.S.C. Sec. 922(a)(6),[1] 18 U.S.C.App. Sec. 1202(a) (1).[2]
 
 
 2
 The District Court, after receiving the appellant's not guilty plea to both counts, set the trial date for May 10, 1972. The United States Attorney, on that date, moved for a continuance of the trial until June 5 because of the illness and hospitalization of one of the Government witnesses. Trial to a jury was held on June 5 and 6 and a guilty verdict on both counts was returned. The District Court sentenced the appellant to four years' imprisonment on the false information count and two years on the possession count, the sentences to run concurrently.
 
 
 3
 On February 21, 1972, the appellant, in the company of two other persons, entered a Morehead, Kentucky, discount store and purchased a gun. In connection with this sale, the appellant was asked certain questions by the store clerk, who was barred by law from selling a gun to a person he knew as a convicted felon. 18 U.S.C. Sec. 922(d)(1). One of the questions on Form 4473 of the Alcohol, Tobacco and Firearms Division of the Treasury Department, see 18 U.S.C. Sec. 923(g), was "Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year?" At trial, the clerk testified that the appellant answered this question, "No," when asked before the purchase of the gun. It is uncontroverted that the defendant had been convicted in a Kentucky state court of uttering a forgery and was sentenced to 2 years' imprisonment.
 
 
 4
 Four separate grounds for reversal are urged by the appellant. He claims that he was deprived of his right to a speedy trial, that certain remarks in the prosecutor's closing argument were prejudicial reversible error, that he was subjected to cruel and unusual punishment and that his privilege against self-incrimination was violated by the trial judge's requiring him to testify first, if at all, in his own defense. We examine these assertions in order.
 
 
 5
 The appellant's initial contention is that the delay from May 10, when the trial was originally scheduled, to June 5, when it actually was held, deprived him of his Sixth Amendment right to a speedy trial. The relevance of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to this case is uncertain. The Barker case was handed down June 22, 1972, more than two weeks after the trial of this case. Under the Barker test, if there is a "presumptively prejudicial delay," 407 U.S. at 530, 92 S.Ct. 2182, then a four-factor balancing test must be used to determine if the right to a speedy trial has been impaired. Because the three week delay in this case was not presumptively prejudicial, there is "no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530, 92 S.Ct. at 2192. Because the Barker test is not applicable to this situation, we do not rule on the issue of whether it is to be applied retrospectively.[3]
 
 
 6
 The appellant's next assertion is that certain remarks of the prosecutor were prejudicial to him. In his closing argument the prosecutor referred to the importance of the gun laws and their enforcement. During the argument, the Assistant United States Attorney made reference to the shootings of President John F. Kennedy, Senator Robert F. Kennedy, Dr. Martin Luther King and Governor George Wallace. Appellant asserts error in the failure of the District Judge to strike the references and instruct the jury to disregard them.
 
 
 7
 No objection was made during the trial at the time these remarks were made. It is a long-standing rule of trial practice that a defendant must object to improper statements made by opposing counsel during closing argument to preserve these objections for appeal. Crumpton v. United States, 138 U.S. 361, 364, 11 S.Ct. 355, 34 L.Ed. 958 (1891); Holden v. United States, 388 F.2d 240, 242-243 (1st Cir.) cert. denied, 393 U.S. 864, 89 S.Ct. 146, 21 L.Ed.2d 132 (1968). The purpose of this rule is to allow the trial judge to attempt to correct the error, if any was committed. Where no objection is made then the court on appeal should intercede only where the error would "seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); Cf. Silber v. United States, 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962).
 
 
 8
 A review of the record in this case convinces this Court that the error, if any, in the closing argument of the prosecutor was not reversible. United States v. Benson, 389 F.2d 376 (6th Cir.) cert. denied, 391 U.S. 903, 88 S.Ct. 1652, 20 L.Ed.2d 418 (1968).
 
 
 9
 The third assertion of the appellant is without merit and can be disposed of easily. Appellant contends that the sentence imposed by the District Court is a violation of his Eighth Amendment protection against cruel and unusual punishment. The sentences were both well within the limits set by Congress. The maximum punishment for the falsification count was five years' imprisonment or a $5,000 fine or both. 18 U.S.C. Sec. 924. The maximum penalty for the possession count was imprisonment for two years or a $10,000 fine or both. 18 U.S.C.App. Sec. 1202(a). The wide discretion in sentencing vested in the District Court was not abused. United States v. Tucker, 404 U.S. 443, 446, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).
 
 
 10
 Appellant's fourth assertion of error revolves around the propriety of the practice of requiring a defendant, who desires to testify on his own behalf, to testify first, if at all. This practice is based on the theory that the defendant, who is entitled to be present during his trial, should not be allowed to hear his witnesses first and then tailor his own testimony to match theirs. As Professor Wigmore stated it, "the reason for this rule is the occasional readiness of the interested person to adapt his testimony, when offered later, to victory rather than to veracity, so as to meet the necessities as laid open by prior witnesses. . . ." Wigmore, Evidence, Sec. 1869 at 502 (3rd ed. 1940).
 
 
 11
 At the time of appellant's trial and conviction, this practice was part of the law of two of the states in this Circuit, Kentucky and Tennessee.[4] It also had been expressly approved by this Court. United States v. Shipp, 359 F.2d 185, 190 (6th Cir.), cert. denied, 385 U.S. 903, 87 S.Ct. 213, 17 L.Ed.2d 134 (1966). This same procedure was also practiced in at least one district court in this Circuit, the instant trial court, and probably in another, the Western District of Tennessee. See, Shipp, supra. Consequently, the defendant's counsel in the instant case was told by the District Judge before the defense was begun that "If the Defendant is going to testify, he has got to testify first."
 
 
 12
 On June 7, 1972, one day following the jury verdict in this case, the United States Supreme Court struck down the Tennessee statute which mandated that a criminal defendant testify first, if at all, in his own defense. Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972). Speaking through Mr. Justice Brennan, the Court wrote:
 
 
 13
 ". . . a defendant may not know at the close of the State's case whether his own testimony will be necessary or even helpful to his cause. Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed. Yet, under the Tennessee rule, he cannot make that choice 'in the unfettered exercise of his own will.' Section 40-2403 exacts a price for his silence by keeping him off the stand entirely unless he chooses to testify first. This, we think, casts a heavy burden on a defendant's otherwise unconditional right not to take the stand. The rule, in other words, 'cuts down on the privilege [to remain silent] by making its assertion costly.' Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965)." (footnotes omitted) 406 U.S. at 610-611, 92 S.Ct. at 1894.
 
 
 14
 An alternative holding offered by Mr. Justice Brennan was that the procedure violated the defendant's due process rights.
 
 
 15
 There can be no doubt that, if the Brooks decision is to be applied to the instant case, the defendant's privilege against self-incrimination has been violated. Our inquiry, thus, must turn to the issue of retroactivity. Should the Brooks decision, handed down on June 7, be applied to the instant trial, which was conducted on June 5 and 6?
 
 
 16
 The problem of retroactive application of Supreme Court constitutional adjudications in the criminal rights area is a difficult and complex one. We note at the outset of this analysis that the Constitution neither requires nor prohibits the retrospective application of a decision of the United States Supreme Court. Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). As Mr. Justice Cardozo stated it, "the Federal Constitution has no voice on the subject." Great Northern Ry. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932). Each case must proceed on an ad hoc basis, with the tests enunciated by the Supreme Court as the guidelines.
 
 
 17
 The retroactivity doctrine in constitutional adjudication was born in Linkletter, supra. The Court in that decision for the first time refused to apply a decision announcing a new principle of constitutional criminal procedure to a defendant whose conviction pre-dated the decision. In Linkletter, the Court refused retroactive application of the decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), which made the Fourth Amendment exclusionary rule applicable to the states.
 
 
 18
 Mr. Justice Clark, writing for the Court, noted that prospective decisions, that is, decisions limited to future application, were unknown at the common law.[5] This was in keeping with the traditional Blackstonian view of the role of judges. According to this theory, judges do not create or fashion new law, but rather merely discover what the law has always been. Therefore, under this theory, a decision determinative of a constitutional issue or any other issue merely states what the law has always been, regardless of what interpretation had been placed on the question earlier. The Linkletter Court then outlined how, through the years, the legal realist school of jurisprudence had gained support in Court decisions. The legal realists concede that the judge often makes law and recognizes the prior decision, later overruled, as an "existing juridicial fact." Under this theory, then, prospective decisions are permissible. The Linkletter opinion concedes that while all prior cases announcing prospective rules of law dealt with invalid statutes or the effect of a decision overturning common law precepts, "there seems to be no impediment-constitutional or philosophical-to the use of the same rule in the constitutional area where the exigencies of the situation require such an application." 381 U.S. at 628, 85 S.Ct. at 1737.
 
 
 19
 A three-factor analysis was adopted by Linkletter to determine whether retroactive application should be given to a new decision. "In short, we must look to the purpose of the Mapp rule; the reliance placed upon the Wolf doctrine; and the effect on the administration of justice of a retrospective application of Mapp." 381 U.S. at 636, 85 S.Ct. at 1741. See also Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The Wolf doctrine which Mapp overruled had held that even though the concept of privacy, the hallmark of the Fourth Amendment, was implicit in the Fourteenth Amendment's protection of "the concept of ordered liberty," the exclusionary rule of evidence, barring the fruits of searches and seizures violative of the Fourth Amendment, was not mandated on the states by the Constitution. Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).
 
 
 20
 The three-factor, purpose-reliance-effect test delineated in Linkletter remains the Supreme Court's framework for the determination of retroactivity. Last term, the Court reaffirmed the continuing vitality of the three-factor analysis. Adams v. Illinois, 405 U.S. 278, 280, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972). Although Linkletter itself gave no indication as to the relative weight to be given the factors in the analysis, later decisions have revealed that the most important factor to be considered is the purpose to be served by the new rule. Desist v. United States, 394 U.S. 244, 249, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Roberts v. Russell, 392 U.S. 293, 295, 88 S.Ct. 1921, 20 L.Ed.2d 1100, rehearing denied, 393 U.S. 899, 89 S.Ct. 73, 21 L.Ed.2d 191 (1968).
 
 
 21
 The most recent pronouncement of the Court on the importance of the purpose factor was in Williams v. United States, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971), where the Court stated:
 
 
 22
 "Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect. Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." (footnote omitted)
 
 
 23
 See, also Ivan v. City of New York, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972). It is obvious, therefore, that the crucial examination in the application of the Linkletter test is the discovery of the new rule's purpose. If its purpose is to enhance the truth-finding mechanism it will be applied retrospectively. If there is another purpose, the entire three-factor analysis must be applied.
 
 
 24
 What then is the purpose of the new rule announced by the Supreme Court in Brooks that the defendant cannot be forced to testify first in his criminal trial defense? The Court stated that the old rule cut down on the defendant's privilege against self-incrimination, making its exercise costly. Thus, the new rule is aimed at the protection of the defendant's privilege against self-incrimination. The privilege is not aimed at the enhancement of the fact-finding process at trial. Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, rehearing denied, 383 U.S. 931, 86 S.Ct. 925, 15 L.Ed.2d 850 (1966). The classic enunciation of the policies behind the privilege against self-incrimination was set forth by Mr. Justice Goldberg, in Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964):
 
 
 25
 "[The privilege] reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates 'a fair stateindividual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load,' 8 Wigmore, Evidence (McNaughton rev., 1961), 317; our respect for the inviolability of the human personality and of the right of each individual 'to a private enclave where he may lead a private life,' United States v. Grunewald, 2 Cir., 233 F.2d 556, 581-582 (Frank, J., dissenting), rev'd 353 U.S. 391, 77 S.Ct. 693, 1 L.Ed.2d 931; our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes 'a shelter to the guilty', is often 'a protection to the innocent.' Quinn v. United States, 349 U.S. 155, 162, 75 S.Ct. 668, 99 L.Ed. 964." 378 U.S. at 55, 84 S.Ct. at 1596.
 
 
 26
 Far from being designed to enhance the fact-finding process at trial, the privilege against self-incrimination, by allowing a defendant to remain silent at his trial when he is the witness most informed about the facts of his case, actually retards the fact-finding process. Cf. Schwartz, Retroactivity, Reliability, and Due Process: A Reply to Professor Mishkin, 33 U.Chicago L.Rev. 719, 729 (1966).
 
 
 27
 The inquiry does not cease, however, with the determination of what constitutional right is involved. We are mindful of the Supreme Court's warning that "the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based." Johnson v. New Jersey, 384 U.S. 719, 728, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882, rehearing denied, 385 U.S. 890, 87 S.Ct. 12, 17 L. Ed.2d 121 (1966). Each rule must be examined carefully to determine its purpose. The specific rule in the Brooks case, permitting a defendant to testify after his other witnesses, does not enhance the fact-finding process at trial. The old rule, by the same token, did not significantly impair the fact-finding process. For example, in the instant case, the District Judge's imposition of the impermissible procedure, at most, kept one witness, the defendant, off the stand. His defense was presented by his two companions on the day of the purchase of the gun. If the defendant himself had testified, his testimony would have been open to impeachment by his prior felony conviction. The concern of the Linkletter Court was to assure that innocent men convicted under later overruled law would not remain imprisoned. We do not think that this danger is present in this case. We emphasize that we are not denigrating the value or importance of the privilege against self-incrimination. We merely examine what the purpose of the Brooks rule is in order to apply the Linkletter test. The purpose of the Brooks rule, we hold, was not to enhance the factfinding process but rather to protect the traditional right of the defendant to exercise his privilege against self-incrimination without penalty.
 
 
 28
 We now address the second factor in the Linkletter test, reliance. Before Brooks, two of the four states in this Circuit, Tennessee and Kentucky, provided for the "first, if at all" rule by statute. See note 4, supra. The Tennessee statute has been law since 1887. See Clemons v. State, 92 Tenn. 282, 21 S.W. 525 (1892). The earliest reference in Kentucky statutes was in 1915, Sec. 1646. It should be noted also that this Circuit had expressly approved the practice for use in the federal district courts. See, Shipp, supra. Judges, both state and federal, in this Circuit were fully justified in relying on the long existence and approval of such a rule.
 
 
 29
 A retrospective application of Brooks would have a considerable effect on the administration of justice. A blanket retroactive application of the new rule would put into question the convictions of all defendants in Tennessee and Kentucky state courts and the convictions of all defendants in at least some of the federal district courts in these two states. At the minimum, every prisoner would have the right to a hearing as to whether the error had been prejudicial. Whether the defendant had testified or not at his original trial, under Brooks his privilege against self-incrimination would have been narrowed. It should be noted that the Brooks defendant did not testify at all. Even if we were to adopt the contention that the retroactivity be applied only to those cases on direct appeal when Brooks was decided, there would be a significant effect on the administration of justice. Retrial or a hearing would be mandated for all those convictions obtained within, perhaps six months to a year prior to Brooks in two States and some district courts. This is particularly troublesome when it is realized that the pre-Brooks procedure had not significantly distorted the fact-finding process.
 
 
 30
 It is contended that this court is bound, because of the treatment of those cases on direct appeal at the time Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), was decided, to apply the Brooks holding to this defendant whose case was in the direct appeal process at the time Brooks was handed down. This contention proceeds on two basic assumptions: 1) that Brooks was merely an extension of Griffin and because of that it is controlled by the same retroactivity decision as Griffin and 2) there is a distinction, for purposes of retroactivity, between cases pending in courts on post-conviction relief petitions and those in court on direct appeal. We feel that both of these assumptions are incorrect.
 
 
 31
 We do not read Brooks as a mere extension of Griffin, which barred comment on the defendant's failure to testify in the trial. While both cases do rely on the privilege against self-incrimination, there are different practices involved in each of the cases. Brooks is not an extension of Griffin any more than all decisions turning on a violation of due process are extensions of any particular due process decision. At any rate, there have been other decisions founded on the privilege against self-incrimination which have not been retroactively applied, either to those on appeal or those whose convictions had become final. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was founded on the privilege against self-incrimination and was held to be purely prospective. Johnson, supra. The determination of the retroactivity of Brooks should not hinge on whether the Supreme Court in Brooks cited Miranda or Griffin.
 
 
 32
 Implicit in the contention that Brooks must be applied to the instant case is the assumption that cases on direct appeal are different than cases before the Court on petition for post-conviction relief. While it is true that such a distinction was made in the application of Griffin, compare Tehan, supra, with O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966), such a distinction is no longer valid in light of more recent Supreme Court decisions. Mr. Justice Harlan, in two strongly worded dissents, raised the same contentions. Mackey v. United States, 401 U.S. 667, 675, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971); Desist v. United States, 394 U.S. 244, 256, 258-259, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). The Supreme Court rejected the distinction both times,[6] reiterating its rejection in Adams, supra, where it stated that "we do not regard petitioner's case as calling for a contrary conclusion merely because . . . his conviction is before us on direct review." 405 U.S. at 285, 92 S.Ct. at 920.
 
 
 33
 Since Griffin was applied to those cases on direct appeal at the time of its decision, O'Connor, supra, the Supreme Court at least four times has denied retroactive application of a new constitutional rule to a defendant on direct appeal. Adams, supra; Williams, supra; Desist, supra; Stovall, supra.
 
 
 34
 We reemphasize that the purpose of Brooks was not the enhancement of the fact-finding process. There was a continued justified reliance on the pre-Brooks law in two of the four States in this Circuit. The effect of a retroactive application of Brooks would be major. We hold that Brooks is not to be applied retrospectively to trials conducted before its date of decision. We note that "we do not disparage a constitutional guarantee in any manner by declining to apply it retroactively." Johnson, supra, 384 U.S. at 728, 86 S.Ct. at 1778.
 
 
 35
 The task of determining retroactivity of a Supreme Court decision presents a difficult problem for a Court of Appeals. This Court has undertaken this task a number of times. Sometimes we have been right. See, e. g., Turner v. United States, 426 F.2d 480 (6th Cir. 1970) cert. denied, 402 U.S. 982, 91 S.Ct. 1646, 29 L.Ed.2d 148 (1971), accord, Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); In re Autorama Tool & Die Co., 412 F.2d 369 (6th Cir. 1969), cert. denied, 397 U.S. 1043, 90 S.Ct. 1349, 25 L.Ed.2d 654 (1971). Sometimes we have been wrong. See, e. g., Robinson v. Neil, 452 F.2d 370 (6th Cir. 1971) rev'd, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); Miller v. United States, 437 F.2d 1199 (6th Cir.) vacated 402 U.S. 939, 91 S.Ct. 1637, 29 L.Ed.2d 107 (1971); Graham v. United States, 407 F.2d 1313 (6th Cir. 1969) vacated 402 U.S. 938, 91 S.Ct. 1623, 29 L.Ed.2d 107 (1971); United States ex rel. Shott v. Tehan, 337 F.2d 990 (6th Cir. 1964), vacated, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, rehearing denied, 383 U.S. 931, 86 S.Ct. 925, 15 L.Ed.2d 850 (1966).
 
 
 36
 The issue of whether Brooks is to be applied retroactively, or only prospectively, already would have been settled with finality if the Supreme Court, at the time that opinion was announced, had made a determination as to whether that decision would be applied retroactively. See Mishkin, The Supreme Court 1964 Term, Forward:-The High Court, the Great Writ, and the Due Process of Time and Law, 79 Harv.L.Rev. 56, 64 (1965). It is noted that the Supreme Court at least once has addressed the retroactivity issue in the same case as the announcement of a new rule. Witherspoon v. Illinois, 391 U.S. 510, 523, n. 22, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
 
 
 37
 In conclusion this court recognizes the doctrine of harmless constitutional error outlined in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, rehearing denied, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967), should not be used with a broad brush to justify any error by the District Court. However, we find this case particularly to be appropriate for the application of that doctrine. Even if Brooks is to be construed as fully retroactive, we conclude that the error in this trial was clearly harmless. The trial transcript reveals that the possession of the gun was admitted and the defense of the defendant, that he was not asked any questions by the clerk, was contradicted emphatically by the two defense witnesses, his companions at the store. Even if it should be determined that Brooks should be applied retroactively, we hold that the conviction in the present case must be affirmed under Chapman.
 
 
 38
 Affirmed.
 
 
 39
 DON J. YOUNG, District Judge (concurring).
 
 
 40
 I concur with the reasoning and the result of the majority opinion on the first three grounds and reach the same result on the fourth ground for the following reasons.
 
 
 41
 In Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), the United States Supreme Court held that the Fifth Amendment safeguards against self-incrimination are applicable to the states through the Fourteenth Amendment. Subsequently, in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the Supreme Court reviewed whether comment by the prosecuting attorney on the defendant's failure to take the witness stand was within the defendant's Fifth Amendment protections. The Supreme Court, after recognizing that the decision whether the defendant should take the witness stand is one of gravest importance,[1] determined that a prosecutor's comments on the defendant's refusal to testify cannot stand in the face of the Fifth Amendment protections. Comment acts as a "penalty imposed by [the] courts for exercising a constitutional privilege [and it therefore] cuts down on the privilege [to remain silent] by making assertion costly." Id. at 614, 85 S.Ct. at 1233. More recently, the Supreme Court was faced once again with insuring that the Fifth Amendment protections are meaningful. In Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), the Supreme Court reviewed, as the majority opinion correctly points out, Tennessee statutes of identical import to the Kentucky statute which the District Judge relied upon in making its "first, if at all" ruling in the present case. The Supreme Court, reaffirming its belief that the defendant's quandary whether to take the witness stand cannot be taken lightly, struck down the Tennessee statutes as unconstitutional, referring to Malloy and Griffin. This reference was not happenstance. The Court, in developing its reasoning for the Brooks decision, began by stating that the defendant has an absolute right "to remain silent unless he chooses to speak, in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." Brooks, supra, 406 U.S. at 609, 92 S.Ct. at 1893 citing from Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). But although the defendant has this right, the choice to exercise it may pose serious dangers to the success of an accused's defense. For this reason, an enlightened judicial system must allow the defendant to weigh the pros and cons in deciding whether to testify. McGautha v. California, 402 U.S. 183, 213, 91 S.Ct. 1454, 1894, 28 L.Ed.2d 711 (1973). That decision, the Supreme Court continued, cannot be properly made at the close of the prosecutor's case, since:
 
 
 42
 . . . a defendant may not know at the close of the State's case whether his own testimony will be necessary or even helpful to his cause. Rather than risk the dangers of taking the stand, he might prefer to remain silent at that point, putting off his testimony until its value can be realistically assessed. Yet, under the Tennessee rule, he cannot make that choice "in the unfettered exercise of his own will." Section 40-2403 exacts a price for his silence by keeping him off the stand entirely unless he chooses to testify first. This, we think, casts a heavy burden on a defendant's otherwise unconditional right not to take the stand. The rule, in other words, "cuts down on the privilege [to remain silent] by making its assertion costly." Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965).
 
 
 43
 On the basis of this reasoning, I believe that Griffin and Brooks deal with the Supreme Court's assurance, originally established in Malloy, that a defendant's Fifth Amendment protection against self-incrimination shall not be abridged during a trial, and not with the Supreme Court's exercise of its supervisory powers to establish the criteria so that an accused will be informed of his constitutional rights. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Since Brooks is a logical extension of Griffin, its prospectivity must be governed by Griffin.
 
 
 44
 The Supreme Court in determining the application of Griffin decided that it must be applied prospectively. Tehan v. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966). At this juncture, the Supreme Court defined prospectivity as being applicable to all cases not yet final and clearly dictated that Griffin was to be applied to all cases on direct appeal. O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966). Between 1966 to the present time the definition of prospectivity has evolved metamorphically. Though all of the cases were found to be prospective, the time of application varies: Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), applied Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), to all cases whose trials commenced after the date of the Escobedo decision; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), applied the rule of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), to line-ups conducted after the dates Wade and Gilbert were decided; Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968), applied Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968), to evidence not yet introduced at trial when Lee was decided; Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), applied Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), to all searches subsequent to the date Chimel was decided; and in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court decided that its ruling should be applied in future revocations of parole. Id. at 490, 92 S.Ct. 2593. Prospectivity has now evolved to mean that the "rule" enunciated by the Supreme Court shall be applied henceforth to the critical stage involving the protected constitutional right.[2]
 
 
 45
 The majority has carefully examined the application of Brooks under the three-pronged test enunciated in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). This test was also carefully examined by the Supreme Court in Tehan when determining the retroactivity of Griffin. If one accepts that Brooks is a logical extension of Griffin, one cannot come to a result inapposite to Tehan. Since Tehan applied Griffin prospectively then Brooks must be applied prospectively. But since the definition of prospectivity has evolved from "cases not yet final" at the time Tehan was decided to "from this day forward" when Morrissey was decided, the ultimate application of Brooks must be different from Griffin.
 
 
 46
 In attempting to avoid what it considers to be the ruling in Tehan, it seems to me that the majority opinion strains unnecessarily to disassociate Brooks from Griffin, for the result in Tehan is in complete accord with the remainder of the majority's opinion. Tehan found Griffin to be prospective. The majority does the same with Brooks. The dispute involved here is not with the application of the tests to determine retrospectivity or prospectivity but solely with the definition of prospectivity. As stated above, this definition has been altered over the past several years so that today prospectivity means something different than it meant when Tehan was decided. This, however, does not impair the determination made in Tehan. It only affects the point at which the determination is implemented. For these reasons I agree with the conclusion of the majority but eschew the extreme methods that they have chosen to arrive at it.
 
 
 
 *
 Honorable Don J. Young, Judge, United States District Court for the Northern District of Ohio, sitting by designation
 
 
 [1]
 18 U.S.C. Sec. 922(a)(6) reads as follows:
 "922. Unlawful acts.-It shall be unlawful-
 "(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter [Secs. 921-928 of this title]."
 
 
 [2]
 18 U.S.C. App. Sec. 1202(a)(1) reads as follows:
 "1202. Receiving, possession, or transportation of firearms-Persons liable; penaltics for violations.-(a) Any person who-
 (1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, . . . and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act [June 19, 1968], any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."
 
 
 [3]
 The Supreme Court, this term, has given strong indications that the traditional Linkletter test for retroactivity, see discussion infra, may be inapplicable to the determination of the retroactivity of nonprocedural decisions. Robinson v. Neil, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). In Robinson, a unanimous Court found Linkletter inapposite in determination of the retroactivity of Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, rehearing denied, 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 79 (1970), which announced new law on double jeopardy. The Court noted that the decision banning certain uses of the death penalty, Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), had been applied retrospectively, Walker v. Georgia and others, 408 U.S. 936, 92 S.Ct. 2845, 33 L.Ed.2d 753 (1972), without regard to Linkletter. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, (1969) which held the double jeopardy clause binding on the states, similarly was retroactively applied in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), without reference to the Linkletter analysis. This court is aware that the Seventh Circuit has already held Barker retroactive. United States v. Strunk, 467 F.2d 969, 971 (7 Cir. 1972), rev'd on other grounds, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973). It should also be noted that the Supreme Court has remanded two cases for reconsideration in light of Barker. Campopiano v. United States, 408 U.S. 915, 92 S.Ct. 2487, 33 L.Ed.2d 328 (1972); Saglimbene v. United States, 408 U.S. 916, 92 S.Ct. 2488, 33 L.Ed.2d 328 (1972)
 
 
 [4]
 The relevant Tennessee statutes read as follows:
 "40-2402. Competency of defendant. -In the trial of all indictments, presentments, and other criminal proceedings, the party defendant thereto may, at his own request, but not otherwise, be a competent witness to testify therein.
 "40-2403. Failure of defendant to testify.-Order of testimony.-The failure of the party defendant to make such request and to testify in his own behalf, shall not create any presumption against him. But the defendant desiring to testify shall do so before any other testimony for the defense is heard by the court trying the case."
 The relevant Kentucky statute reads as follows:
 "421.225-Testimony of defendant.
 (1) In any criminal or penal prosecution the defendant, on his own request, shall be allowed to testify in his own behalf, but his failure to do so shall not be commented upon or create any presumption against him.
 (2) A defendant so requesting to be allowed to testify for himself shall not be allowed to testify in chief after any other witness has testified for the defense."
 Apparently, Tennessee and Kentucky are the only two states in the country which had such statutes before the decision in Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972). See 406 U.S. 613, 616, 92 S.Ct. 1891 (Burger, C. J., dissenting).
 
 
 [5]
 Mr. Justice Holmes once wrote, "Judicial decisions have had retrospective operation for near a thousand years." Kuhn v. Fairmont Coal Co., 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (dissent)
 
 
 [6]
 It is interesting to compare the rejection of the distinction in the later cases with the flat statement in Linkletter that "a change in law will be given effect while a case is on direct review." 381 U.S. at 627, 85 S.Ct. at 1736. The source of that principle of law was an 1801 Supreme Court case. United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49. In that case, there was an intervening treaty
 
 
 [1]
 See Wilson v. United States, 149 U.S. 60, 65-68, 13 S.Ct. 765, 37 L.Ed. 650 (1893); United States v. Shipp, 359 F.2d 185, 190 (6th Cir. 1966) (dissenting opinion); and Bell v. State, 66 Miss. 192, 5 So. 389 (1889), for a discussion of this point
 
 
 [2]
 For example, the Supreme Court in Escobedo sought to prevent certain types of incustody interrogation by not allowing statements obtained at the interrogation into evidence at the trial. The critical stage of this protection was the trial and Johnson applied the rule of Escobedo to all trials commenced after Escobedo was announced. Whereas in Wade and Gilbert, the critical time was the line-up and Stovall applied the rule of Wade and Gilbert to all line-ups conducted after Wade and Gilbert were announced. The critical stage that Brooks seeks to protect is when the state rests and the defense decides its order of witnesses. Brooks should apply to this "critical stage" occurring after the decision of Brooks was announced. Since petitioner's trial was over on the day preceding the decision of Brooks, the critical stage had passed and Brooks cannot apply to his case