**Barbara W. FINCH, Executor of the Estate of Harold H. Finch, American National Bank and Trust Company of Chattanooga, Tennessee, Trustee, Plaintiffs-Appellees,**

v.

**MONUMENTAL LIFE INSURANCE COMPANY, Defendant-Appellant.**

No. 85–5854.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 9, 1986.

Decided June 4, 1987.

Rehearing and Rehearing En Banc Denied July 21, 1987.

---

* Judge Randall is recused, and therefore did not participate in this decision.

Michael R. Campbell, Campbell and Campbell, Chattanooga, Tenn., for defendant-appellant.

Scott N. Brown, Jr., Chattanooga, Tenn., for plaintiffs-appellees.

Before ENGEL, JONES and NELSON, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendant Monumental Life Insurance Company ("Monumental") appeals from the judgment entered on a jury verdict finding it liable under a policy of life insurance to the plaintiffs, Barbara Finch and American National Bank and Trust Company ("American National Bank"). Monumental also appeals the order denying its motion for a new trial. Finding no error in the district court's disposition of the case, we affirm.

Barbara Finch is the widow of Harold Finch and an executor of his estate. The American National Bank is the testamentary trustee under Mr. Finch's will. Mr. Finch died on May 2, 1983, at the age of 57, of a stroke. He had been suffering from cancer since the mid–1970s, but the cancer was in remission at the time of his fatal stroke.

For a number of years prior to his death, Finch had maintained life insurance under a group policy issued by Fireman's Fund Insurance Company to the National Pilots Association ("NPA"). On February 1, 1979, Monumental replaced Fireman's Fund as the insurer of the NPA. At the time Monumental became the insurer, it issued two new certificates of group term life insurance to Finch, each in the amount of $20,000; however, Finch paid premiums for only one $20,000 policy. The two certificates were identical and included the same certificate number, indicating that they represented the same policy. The American National Bank, as trustee, was the named beneficiary of the certificates. Finch also had purchased $157,000 worth of life insurance with other insurers.

The group insurance program was administered and serviced by Membership Services, Inc. Membership Services handled the production and mailing of premium notices to and the receipt of payments from members of the NPA who held certificates under the group policy, including

Finch. It was the business practice of Membership Services to send each insured a premium notice that had a tear-off portion that the insured was to mail back to Membership Services with his payment. The premium notices were generated by Membership Services personnel and computer on a mass-mailing basis and were taken to another firm, Associated Computer Systems, which actually stuffed and mailed the envelopes containing the notices. Premium notices were customarily sent on a quarterly basis to certificate holders. Finch's notices were sent to a post office box in Chattanooga, Tennessee. There was nothing in the certificate of insurance to inform a policyholder of when his premiums were due. The notices were the method used by Membership Services to advise insureds of premiums due and to facilitate collection. In the event that an insured failed to make timely payment of his premiums, two reminder notices would be sent within the month. A third reminder notice would be sent to those who still had not made payment as of approximately one month after the due date.

The last premium payment received from Finch by Membership Services was on or about October 19, 1982, covering the period up until February 1, 1983, at which time the next premium payment was due. No premium payment was made by or on behalf of Finch for the premium due on February 1, 1983 or for any period thereafter. Finch had regularly paid all quarterly premiums prior to the one due on February 1, 1983. Following Finch's death on May 2, 1983, the plaintiffs filed a claim for the insurance proceeds under the certificate. The claim was denied by Monumental on the basis that policy coverage had lapsed because the February 1, 1983 premium had not been payed.

On August 31, 1984, the plaintiffs filed suit in Tennessee state court against Monumental and Membership Services, alleging that they were beneficiaries of a life insurance certificate issued by Monumental, that Monumental had wrongly denied coverage based upon lapse of the policy, and that they were entitled to recover the policy proceeds from Monumental or Membership Services because of Monumental's failure to send Finch a premium notice for February 1, 1983. A petition for removal was filed on October 3, 1984 by both defendants, and the case was removed to the United States District Court for the Eastern District of Tennessee. By a Consent Order filed January 25, 1985, the case was referred to a United States Magistrate for all further proceedings.

On April 1, 1985, the court ruled that the burden of proving that the premium notice was mailed to Finch was upon the defendants, but that the defendants did not have the burden of proving that the notice was received by Finch. On June 10, 1985, the defendants filed an Answer to plaintiffs' complaint and asserted that the February 1, 1983 premium had not been paid, and that the policy lapsed on March 1, 1983, after expiration of a thirty-day grace period, and was not in effect as of the date of Finch's death. The case proceeded to trial on June 17, 1983, before a magistrate and a six-person jury.

At trial the defendants asserted that Finch must have received not only one premium notice for February 1, 1983, but three other notices that would have been mailed in succession. They further asserted that although no record of individual mailings was maintained, it was their business practice to send notices to all insureds in the NPA group according to a computer program that always produced notices in time for insureds to make premium payments. The defendants concluded that since it was a uniform and continuous business practice as to all insureds, Membership Services must have sent notice to Finch. However, they produced no direct evidence showing that notice had been sent.

Mrs. Finch testified that her husband considered life insurance important and wanted to provide for his family after his death. Mrs. Finch further testified that she never saw any of the premium notices that were allegedly sent because all notices were mailed to a post office box that Finch emptied on his way to work each morning, and he handled all the bills. She character-

ized Finch as having "a mind like a catalog." She stated that it was his habit to pay bills the same day they came, and he was financially able to pay the February 1 premium.

Judy Plemmons, Finch's secretary from April 1981 to January 1983, testified that shortly after she began work for him, he told her of his cancer and stated more than once that he had bought all the insurance he could in order to financially provide for his family. She further testified that Finch was "very accurate" in handling his business affairs and "took care of [things] immediately." Deborah Wright, who became Finch's secretary on January 10, 1983, when Judy Plemmons left, testified that Finch "was a very meticulous man.... He took care of matters right then, and not later." Neither of the secretaries ever saw any mail from Monumental because Finch picked up his mail on his way to work and handled his personal business himself.

Robert Radloff, an NPA member who was insured under the same group policy as Finch and whose name was next to Finch's on the computer list, testified that he did not receive a notice for the premium due February 1, 1983, nor any reminder notices. He explained, however, that he had no independent recollection of not receiving notice, but reasoned that he would have paid the premium if he had received notice, and because he did not pay the premium, he must not have received the notices. It was revealed on cross-examination that Radloff had been late making other quarterly payments and had once paid a premium twice.[1]

No one was able to testify or present evidence that a notice was actually mailed to Finch with respect to the February 1, 1983 premium. However, evidence was presented that there were no known computer malfunctions during the time the notice would have been sent, that Finch's name was still in the computer nearly one year after his death, and that the computer had no ability to delete anyone from the list

of policyholders to whom notices were to be sent. The only apparent problem with the notice system occured when Membership Services terminated its business arrangement with Associated Computers because return envelopes were not included with premium notices and a batch of notices were sent out two weeks late. This arrangement was terminated in June 1984, over one year after Finch's death.

At the close of proof, Membership Services was dismissed as a defendant. Thereafter, the jury returned a verdict for the plaintiffs. An order was filed directing that plaintiffs recover $23,000 from Monumental, including prejudgment interest in the amount of $3,000. Monumental then filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied, and Monumental now appeals.

On appeal, Monumental raises the following assignments of error. First, it asserts that there was insufficient evidence to support the jury's verdict. Second, it asserts that the district court erred in allowing Radloff to testify about not receiving a premium notice for February 1, 1983. Third, Monumental challenges the district court's decision to allow Barbara Finch to testify as to statements made by her late husband. Finally, Monumental claims that the jury instructions were improper. We will address each of these contentions in turn.

### I.

Monumental first argues that there was insufficient evidence to support the jury's verdict and that the trial court erred by not granting its motion for judgment notwithstanding the verdict or a new trial. "It is well settled in this circuit that in diversity cases the federal courts are bound by state law in determining whether there is sufficient evidence to support a jury's verdict." *Gold v. National Savings Bank*, 641 F.2d 430, 434 (6th Cir.), *cert. denied*, 454 U.S. 826, 102 S.Ct. 116, 70 L.Ed.2d 100 (1981).

---

1. Monumental also produced evidence that of the 117 certificate holders whose premiums were due on February 1, 1983, and who would have received a notice regarding the premium, 111 paid their premiums.

Tennessee Rule of Appellate Procedure 13(d) provides that "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." The Tennessee Supreme Court has noted that "review [of a jury verdict] is limited to determining whether there is any material evidence to support the verdict." *Truan v. Smith*, 578 S.W.2d 73, 74 (Tenn. 1979). Furthermore, "the rule of law with respect to appellate review of the sufficiency of evidence is that all the evidence for the prevailing party must be taken as true. Moreover, all reasonable inferences favorable to the prevailing party must be made and all countervailing evidence must be disregarded." *Gold*, 641 F.2d at 434 (citing Tennessee law).

With this in mind, we turn to an examination of the evidence in this case. The plaintiffs relied on the theory of equitable estoppel to support their claim. They argued that because the insurer had established a custom or practice of sending notices to the insureds of when their premiums were due, and because the insureds relied on these notices, the insurer is estopped from treating the policy as lapsed when a premium is not paid due to the failure of the insurer to send notice to the insured. Under Tennessee law, "[e]stoppel requires at a minimum (1) reliance upon the statements or actions of another without the opportunity to know the truth, and (2) action based on that reliance which results in detriment to the actor." *W.F. Holt Co. v. A & E Elec. Co.*, 665 S.W.2d 722, 735 (Tenn.App.1983), " 'The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted.' " *Giles County Bd. of Educ. v. Hickman*, 547 S.W.2d 944, 946 (Tenn.1977) (quoting *Dickerson v. Colgrove*, 100 U.S. (10 Otto) 578, 580, 25 L.Ed. 618 (1879)). The burden of establishing estoppel is on the party that invokes it. *Third Nat'l Bank v. Capitol Records, Inc.*, 445 S.W.2d 471, 476 (Tenn. App.1969). In order to prevail, the plaintiffs had the burden of proving that Finch had relied on the notices sent by Monumental to make his payments and that he had failed to make the February payment because he did not receive the February premium notice.

■ Our review of the record finds sufficient evidence supporting the finding that Finch relied on the notices to make his payments. There is ample evidence that Monumental routinely and regularly sent notice of premiums due to insureds. Finch had long been accustomed to receiving such notices. Indeed, old notices were found in his personal files. It seems entirely reasonable to conclude that he relied on these notices to apprise him of when his premiums were due. This conclusion is supported by the fact that the insurance certificate itself, which was in Finch's possession, did not specify the amount and time of payment. Consequently, it is difficult to perceive how an insured could have been aware of when his premiums were due unless he received a bill or some other notice from the insurance company. An insured would thus have been fully justified in relying on Monumental to notify him of when his payment was due. Having long been in the practice of sending notices to its customers, Monumental cannot now deny that its purpose in sending these notices was to notify its customers of when their premiums were due.

We also find sufficient evidence supporting the jury finding that Finch failed to make his February 1, 1983 payment because he did not receive notice from Monumental.[2] There is no direct evidence in the

---

2. Monumental contends that the only way that the jury could have reached this conclusion would have been by basing an inference on an inference, which is prohibited by Tennessee law. *See Crown Cork & Seal Co. v. Morton Pharm., Inc.*, 417 F.2d 921, 926 (6th Cir.1969); *Edenton v. McKelvey*, 186 Tenn. 655, 212 S.W.2d 616, 618 (1948); *see also, Preston v. Smith*, 41 Tenn.App. 222, 293 S.W.2d 51, 60 (1956), (one presumption may not be the basis of another presumption). Monumental argues that the essential element of estoppel, reliance, is missing because reliance can only be established by basing one inference upon another inference. We disagree. In order to have concluded that Finch had relied on Monumental's notices to make payment, the jury need only have inferred that one who has received past notices has relied on

record that the notice was sent or received. Monumental argues that notice must have been sent because the computer responsible for producing notices had been doing so since 1980, and there had been no computer malfunctions during the period when the February notices would have been mailed. Monumental further argues that Finch's name was in the computer prior to and after February 1, 1983, and that premium notices were prepared and mailed for the February 1 due date. However, despite these assertions, Monumental concedes that it has no direct evidence that Finch's notice was mailed. The burden of proving that the notice was sent was on Monumental.[3] It failed to meet this burden with either direct or circumstantial evidence. Consequently, the jury made a fair inference that the mailing had not been made.

Additionally, we note that the record contains evidence that Finch had maintained this policy for several years and had made his premium payments regularly and in a timely fashion. The record also contains evidence that Finch believed that insurance was important, and he wanted his family taken care of after his death. Finch was clearly financially capable of making the payment. Finally, there was evidence that Finch was a very sick man. He had been suffering from cancer since the mid-70's, and although the cancer was in remission at the time of his death and was not the cause of his death, it is clear that at this point in his life he was uninsurable. We find the totality of the evidence to be sufficient to support the jury's finding. The trial court therefore properly refused to grant Monumental's motion for a judgment notwithstanding the verdict or a new trial.

## II.

Monumental next argues that the trial court erred in allowing Robert Radloff to testify that he had not received a premium notice for February 1, 1983. Monumental first argues that the evidence was not relevant under Fed.R.Evid. 401.[4] The determination of relevancy of evidence is within the broad discretion of the trial judge, and his determination of relevancy will not be disturbed unless there is a showing of a clear abuse of discretion.

The key issue in this case was whether the February 1 premium notice had been sent to Finch. Monumental's contention was, in effect, that it had sent notice because notices were sent as a matter of business habit, custom, and routine. Radloff's testimony that he had not received his notice directly challenged Monumental's assertion, and, therefore, was relevant.

Monumental next argues that even if the testimony was relevant, it should have

---

those notices to make payment. Since there was direct evidence that Finch had received notices in the past, the inference made by the jury from that, i.e., that he relied on those notices, is not impermissible.

**3.** Monumental contends that the court erred in placing the burden on it to prove that it sent notice to Finch. Although there is no Tennessee case directly holding that the burden of proof is on the insurer to show that it sent notice to the insured, there is support for this proposition. In *Mills v. National Life Ins. Co.*, 136 Tenn. 350, 189 S.W. 691, 694 (1916), the Tennessee Supreme Court noted in dicta that:

If a course of dealing between the company and the assured had been shown, establishing a uniform and reasonably long-continued custom to send assured such premium notices, then it might be contended with much reason that it was incumbent upon the company to prove the sending of such notice.

Similarly, *Couch on Insurance states that:*

If notice has been sent by mail, the insurer has the burden of pleading and proving that it complied with all the prerequisites necessary to enable it to reach the other party in due course of mail; that is, it must be properly addressed and mailed, postage prepaid, *for the burden of proving notice of assessments is upon a beneficial association....*

5 Couch on Insurance 2d, § 30:158 (Rev. ed. 1984) (emphasis added and footnote omitted).

The placement of the burden as enunciated by these sources is reasonable considering the fact that the insurer is in a much better position to show at least that it sent notice on its way. Therefore, we find no error in the district court's allocation of the burden of proof on this issue.

**4.** Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.*

been excluded under Rule 403 [5] because the danger of unfair prejudice was greater than the probative value of the evidence. Admission of relevant but potentially prejudicial evidence is also placed within the sound discretion of the trial court. A trial court has wide discretion in balancing probative value against unfair prejudice and its ruling will not be disturbed by an appellate court unless it has clearly abused its discretion. This discretion is "exercised by balancing the probative value of the evidence against its prejudicial attributes." *United States v. Brady*, 595 F.2d 359, 361 (6th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84. In reviewing a decision of the trial court on this issue, an appellate court "must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *Id.* Under this standard, we are easily convinced that Radloff's testimony was admissible under Rule 403.

## III.

■ Monumental also contends that the trial court erred in allowing Barbara Finch to testify regarding statements made by her deceased husband to the effect that he considered life insurance to be important. Monumental asserts that the admission of the testimony violated Tennessee's Dead Man's Statute, which provides in pertinent part that:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party.

Tenn.Code Ann. § 24–1–203 (1980). The admission of Mrs. Finch's testimony was clearly a violation of the Dead Man's Statute. The plaintiffs concede the point, but assert that because the issue was not raised before the district court, it has been

waived under Fed.R.Evid. 103(a)(1). Monumental concedes that it did not properly object to the testimony. However, it argues that admission of the testimony was plain error and its claim of error should be considered under Fed.R.Evid. 103(d).

A party may not claim as error the introduction of evidence unless a timely objection has been made. Fed.R.Evid. 103(a)(1); *see Helminski v. Ayerst Labs.*, 766 F.2d 208, 211 (6th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 386, 88 L.Ed.2d 339 (1985). A court may, however, review the introduction of evidence in the absence of an objection if it constitutes plain error and affects a party's substantial rights. Fed.R.Evid. 103(d); *Helminski*, 766 F.2d at 211. Plain error is that that "would 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Black*, 480 F.2d 504, 507 (6th Cir.1973) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). A court's power to review a claim of error under the plain error doctrine is discretionary and "should be exercised only in those situations in which the failure to do so would result in a manifest miscarriage of justice." *United States v. Grosso*, 358 F.2d 154, 158 (3rd Cir.1966), *rev'd on other grounds*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). The Supreme Court has noted that "the plain error exception to the contemporaneous objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).

The standards for exercising review under the plain error doctrine are stringent. We conclude that the admission of Mrs. Finch's testimony does not rise to the level of plain error. Accordingly, we are precluded from considering Monumental's claim of error since a timely objection was

---

**5.** "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.…" *Id.*

not made. In any event, we do not believe that Mrs. Finch's testimony was essential to a jury's finding in favor of the plaintiffs. The jury was aware that insurance was important to Mr. Finch simply by the fact that he suffered from cancer and had purchased another $157,000 worth of life insurance.

### IV.

Finally, Monumental challenges the adequacy of the jury instructions given by the district court. Monumental sought to have the court instruct the jury that insurance coverage could not be created by estoppel or waiver. The court refused to give this instruction. Its refusal was not error. We have reviewed the instructions given by the court and find that they adequately dealt with the issues raised in this case.

### V.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

DAVID A. NELSON, Circuit Judge, dissenting.

Because it does not seem to me that the plaintiffs made out a case that could properly be submitted to the jury, I respectfully dissent.

The $157,000 life insurance coverage written by insurers other than defendant Monumental was "whole" life, the premiums for which remained the same as the insured grew older. The $20,000 coverage under the group policy issued by defendant Monumental, on the other hand, was "term" insurance, the premiums for which increased each time the insured entered a new age bracket. Thus in 1981 there was a 30% increase in Mr. Finch's premium for the Monumental coverage—and notwithstanding the fact that he had contracted cancer a few years earlier, Mr. Finch had been moved to write the insurance company a letter stating that if the premium increase was because of age, "I may choose to discontinue coverage."

A decision to drop the relatively small and increasingly expensive Monumental coverage would not have been irrational; term insurance is cheap for young people and expensive for old people, and with his cancer in remission, Mr. Finch might very well have decided that his Monumental coverage was not worth what it had come to cost.

Mr. Finch was not unaware of the cost. He knew what the dollar amount of the premium had been in the past, at least, just as he knew that it was necessary to pay the premium every quarter if he wanted to maintain his coverage.

It is uncontested that Mr. Finch failed to write a check for the quarterly premium due February 1, 1983. There are at least two possible reasons for this: he may have chosen to discontinue the term coverage, just as he said he might, and it is also possible that he had not received any of the insurance company's four separate notices and had forgotten, as a result, that the premium was due. It was incumbent upon the plaintiffs to present evidence from which the jury could logically conclude that the latter explanation for Mr. Finch's failure to pay the premium was the correct one. I am not persuaded that the plaintiffs sustained that burden.

The mere fact that premium notices had been sent Mr. Finch in the past does not necessarily mean that in the absence of such a notice he would have forgotten that a premium was due; Mr. Finch had "a mind like a catalog," after all, and he had long been accustomed to writing premium checks every three months. Any inference that Mr. Finch needed to be reminded to pay the quarterly premium would have been weak at best.

The further inference that Mr. Finch received neither the initial premium notice nor any of the three follow-up notices is weaker still. Even if the initial computer-generated notice was stuffed in the wrong envelope by mistake, it would have been a truly extraordinary coincidence for every one of the follow-up notices to have miscarried as well. It was established that Mr. Finch's name remained in the memory of the computer along with the names of the other members of the insured group, and it

was established that most of the other members of the group did in fact pay the quarterly premium due February 1, 1983. I think it would be pure speculation to suppose that Mr. Finch failed to pay the premium because he received none of his four notices, rather than because he thought the premium had become too high in relation to the amount of coverage it paid for.

> It is not proper, under Tennessee law, "for the jury to be permitted to speculate as to which of several equally logical inferences might be drawn from proven facts. The burden is on the Plaintiff to establish by competent evidence facts from which the logical inference ... to be drawn, and that alone, is in favor of the Plaintiff's contentions."

*Nashville, Chattanooga and St. Louis Railway v. Crawford,* 39 Tenn.App. 37, 281 S.W.2d 69, 74 (1954). The fact that Mr. Finch failed to pay the premium did not, of itself, establish the reason for his failure to pay it. It is at least as logical to suppose that he threw the insurance company's notices away as to suppose that he never received any of them. The plaintiffs not having shown that the latter inference is the only one that can logically be drawn from the fact of non-payment, I would reverse the judgment of the trial court and direct entry of judgment in favor of the defendant insurance company.