**Clifford NORTHERN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 71–1603.**

United States Court of Appeals, Ninth Circuit.

Feb. 18, 1972.

---

33. *See* Note, The Allocation of Attorneys Fees after Mills v. Electric Auto-Lite, 38 U.Chi.L. Rev. 316, 329–330 (1971).

**428**

Gerald A. Witt (argued), Los Angeles, Cal., for appellant.

Jan L. Handzlik, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., Eric Nobles, Chief, Criminal Division, Stephen V. Wilson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before KOELSCH and WRIGHT, Circuit Judges, and NIELSEN, District Judge.*

PER CURIAM:

Clifford Northern appeals from a judgment convicting him of bank rob-

bery with the use of a dangerous weapon [18 U.S.C. § 2113(a), (d)]. We affirm.

The crime was committed on June 20, 1969, when three men, armed with guns and wearing motorcycle helmets, entered and robbed the Security Pacific National Bank in Los Angeles, California. During the robbery, a fourth man, later identified as appellant, waited outside at the wheel of the getaway automobile.

On October 17, 1969, F.B.I. agents, investigating another bank robbery which had occurred in New Jersey, went to an apartment on Nicolet Avenue in Los Angeles to arrest one Barry Shipley, a suspect in the New Jersey robbery. When they arrived, appellant was the only person there. The agents, after identifying themselves and advising appellant of their purpose, proceeded to question him.

Appellant stated that he shared the apartment with one Maas, and that one of the two bedrooms belonged to him and the other to Maas. He gave the officers permission to search his own bedroom. They found nothing incriminating. They then showed appellant a police photo of Shipley. Appellant identified the subject as the man he knew as Maas; he also stated that "Maas" and one Allen Bamberger, another suspect in the New Jersey robbery, had been in the apartment together and that Shipley had had a large sum of money there. One of the agents immediately secured a search warrant for Shipley's bedroom. A search of it disclosed several photographs which tended to link appellant with Shipley and other known participants in the New Jersey robbery.[1] The agents thereupon arrested appellant for harboring Shipley. However, he was released on bail and shortly afterward fled the jurisdiction; he

---

* Leland C. Nielsen, United States District Judge, San Diego, California, sitting by designation.

1. Also found in the search was a photograph showing appellant counting a stack of currency, a gun box, which bore a number corresponding to the serial number on a pistol linked to the Los Angeles robbery, and some .45 caliber bullets. These items were subsequently introduced as exhibits at appellant's trial.

remained at large until January 1970, when he was apprehended in New Jersey.

While appellant was in custody in New Jersey, the government agents obtained evidence connecting appellant with the Los Angeles robbery. They filed a complaint in March of 1970 but, because of appellant's resistance, they were unable to return him to Los Angeles until late August of 1970. Approximately two months later appellant was indicted for the Los Angeles robbery.

(1) Appellant argues that, because of the lapse of time between his arrest in New Jersey and his indictment, he was denied a speedy trial; alternately, he contends that he was denied due process. He does not urge any undue post-indictment delay.

### (a) *Speedy Trial*

 This court has consistently held that the date of the filing of a criminal complaint, or indictment where there is no complaint, marks the inception of the speedy trial guarantee of the Sixth Amendment. Benson v. United States, 402 F.2d 576 (9th Cir. 1968); Venus v. United States, 287 F.2d 304 (9th Cir. 1960), reversed on other grounds, 368 U.S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341. The applicable statute of limitations affords a suspect protection against the bringing of stale charges. See United States v. Ewell, 383 U.S. 116, 122, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). Here, both the complaint and the indictment were filed well within the five year limitations statute applicable to the crime charged. 18 U.S.C. § 3282. Of the seven month delay between the filing of the complaint and the indictment, most was attributable to appellant's efforts to block his removal from New Jersey. The remaining delay was not unreasonable. See United States v. Napue, 401 F.2d 107, 115 (7th Cir. 1968), cert. denied 393 U.S. 1024, 89 S. Ct. 634, 21 L.Ed.2d 568, reh. denied 393 U.S. 1112, 89 S.Ct. 858, 21 L.Ed.2d 813.

### (b) *Due Process*

In support of his due process argument, appellant relies upon Ross v. United States, 121 U.S.App.D.C. 233, 349 F. 2d 210 (1965). In that case the D.C. Circuit held that deliberate delay in bringing criminal charges might constitute a denial of due process where as a consequence the defendant was materially prejudiced in his defense. Although *Ross* has been questioned as a constitutional precedent,[2] this court has applied similar due process principles in instances where pre-prosecution delays have been asserted. United States v. Bray, 442 F.2d 1064 (9th Cir. 1971); United States v. Walton, 411 F.2d 283 (9th Cir. 1969).

However, in this case, even if such principles are applied, the record shows no deprivation of due process. The crime was committed in June 1969, but it was not until March of the following year that the authorities were sufficiently aware of appellant's participation in the robbery to file a complaint against him. At least from this time, appellant was apprised that a trial would probably follow. The government's delay in not securing an indictment until October was justified in part by the fact that appellant was in custody in New Jersey and resisted removal to California; the government could not have brought him to trial until he was returned to California in late August. The government offered no reason to justify the delay in securing the indictment following appellant's return, other than the need for time to prepare the case for presentation to the grand jury. Nevertheless, we are not prepared to say that the lapse of some seven weeks is per se prejudicial.

Nor has appellant shown prejudice. Unlike the situation in the *Ross* case,

2. The Second Circuit, in United States v. Sanchez, 361 F.2d 824, 825 (2d Cir. 1966) suggested that the underlying basis for the Ross decision was the court's "supervisory" power over federal law enforcement officers, rather than the due process clause.

where the sole prosecution witness possessed virtually no recollection of the facts and relied almost exclusively upon notes in order to testify, here, as the record shows, none of the witnesses experienced difficulty in giving his testimony or was obliged to resort to outside aids. The fact that appellant was unable to locate two prospective witnesses is of no moment since, as appears from the record, the subject about which he proposed to interrogate them was irrelevant to the charge against him.[3]

(2) The Search of Shipley's Bedroom.

We need not, nor do we, pass upon appellant's contention that the search warrant was overbroad in scope or invalid because the initiating affidavit was defective. The conclusion is manifest that appellant lacked standing to object to the search. As the Court pointed out in Alderman v. United States, 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969):

"The established principle is that the suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the production of damaging evidence."

Appellant claimed no interest in the property seized and the record discloses that the bedroom in which it was found was occupied exclusively by Shipley. Appellant did not share its use with another, as did the petitioner in Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1964), or have permission to use it, as did the appellant in Burge v. United States, 333 F.2d 210 (9th Cir. 1964), cert. denied 382 U.S. 829, 86 S.Ct. 63, 15 L.Ed.2d 72; hence he was not a "victim" of the search. Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). His situation with respect to the entry of the bedroom appears similar in all respects to that of the appellant in Parker v. United States, 407 F.2d 540 (9th Cir. 1969); there this court, pointing out that Parker possessed no right "to come and go from Slaney's house," held that he lacked standing because no Fourth Amendment right of his had been violated by an unlawful entry into the other's house.[4]

The judgment is affirmed.

3. The missing witnesses would have testified solely with respect to an alleged illegal search of an apartment in Dania, Florida. Among the items seized were motorcycle helmets and a gun, which were introduced as exhibits at appellant's trial. But appellant was neither present in the apartment nor had any interest in it. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

4. We have had occasion to point out, in a slightly different context, the personal nature of the right of privacy. In Cunningham v. Heinze, 352 F.2d 1, 4 (9th Cir. 1965), cert. denied, 383 U.S. 968, 86 S.Ct. 1274, 16 L.Ed.2d 309, we held that where a room in a dwelling is reserved for the exclusive use of one person, other occupants of the dwelling may not effectively waive the Fourth Amendment rights of such person with respect to that room. In contrast, in Pasterchik v. United States, 400 F.2d 696 (9th Cir. 1968), cert. denied, 395 U.S. 982, 89 S.Ct. 2142, 23 L.Ed.2d 770, we held that where two persons had an "equal and independent right of access to the place searched," [400 F.2d at 699], either may consent to a search of that place.