UNITED STATES of America, Plaintiff,

v.

**Larry Wayne CASSITY, Raymond Lee Dean, Terry Gene Hines, Stephen Gordon Lenk, and Billy Sword, Defendants.**

Crim. A. No. 77–80932.

United States District Court,
E. D. Michigan, S. D.

Aug. 28, 1981.

Ross Parker, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Edward Wishnow, Southfield, Mich., for defendants Cassity and Lenk.

John Mayer, Detroit, Mich., for defendant Hines.

Thomas Rosender, Pontiac, Mich., for defendant Sword.

Thomas E. Jackson, Federal Defender Office, Detroit, Mich., for defendant Dean.

## OPINION

FEIKENS, Chief Judge.

Defendants successfully challenged their 1978 convictions for conspiring to manufacture and manufacturing amphetamine, a

controlled substance, on the grounds that the evidence by which they were convicted was the fruit of illegal electronic surveillance. The United States Court of Appeals for the Sixth Circuit held that the search warrants pursuant to which the beepers were installed in two cans of chemicals and a heating mantle did not meet the requirements of the Fourth Amendment because they contained no expiration date or time limit, see United States v. Cassity, 631 F.2d 461 (6th Cir. 1980), and remanded the case to me for an evidentiary hearing on whether beeper (i. e., electronic homing device) surveillance violated each defendant's reasonable and legitimate expectation of privacy. I have been instructed to undertake the analysis set forth in United States v. Bailey, 628 F.2d 938 (6th Cir. 1980), to determine whether the evidence seized as a result of the beeper surveillance should be suppressed.

## I.

At an evidentiary hearing, defendant Cassity testified that he had resided at 2803 Stair, Detroit, for twenty to twenty-five years with his mother and father. His girlfriend also resided at this address and shared a bedroom with him. Cassity acknowledged that he had stored a green can of chemicals in the garage at the residence, although the can of chemicals was not his. The garage was kept locked and, even though other members of the residence had access to the garage, Cassity expected privacy when he placed the chemicals there for storage.

Defendant Hines testified that he drove a yellow van from Eight Mile and Greenfield Roads to a parking lot at the request of Cody, an alleged co-conspirator. Hines alleges that he had no knowledge there was a blue can of chemicals and a heating mantle in the rear of the van as there was an immovable partition behind the driver and passenger seats which precluded any view into the rear compartment. Similarly, no windows allowed a view of the contents of the compartment. Hines contends that he had a reasonable expectation of privacy in the van even though the van had been rented and he had been requested to move it by someone other than the owner.

The 1494 Calvary, Detroit, address is a quadruplex, part of which was rented by defendant Sword and his friend. Sword lived there with his girlfriend and his friend, the friend's wife, and child. Only Sword and his friend had a key to the basement, which was normally kept locked and where at least one of the cans of chemicals was located. Other individuals were permitted access to the basement, including his friend's mother-in-law who lived next door. Sword maintains that he expected the residence to be private, although it was shared by others, and that those persons living in the apartment had exclusive control of the premises.

The Dean family owned the 6344 Hanson, Detroit, residence where the cans of chemicals and the clandestine laboratory were located. Defendant Lenk was a guest in that house for four days prior to its search on August 17, 1977. Lenk shared meals at the residence, kept his personal belongings there during his stay, and had the right to come and go when he so desired. Lenk contends that he reasonably expected privacy at that address by virtue of his guest status.[1]

## II.

In this case, since the Court of Appeals has held that the search warrants secured for the installation of the beepers in the cans of precursor chemicals and the heating mantle were invalid because they contained no termination date,[2] United States v. Cas-

---

1. An indictment against defendant Dean on the same charges was dismissed at the evidentiary hearing held on the motion to suppress.

2. I note as a matter of clarification that Search Warrant No. 780866, authorizing the search of

the blue five-gallon can of benzene, was not open-ended, but authorized the search for three days. Presumably, then, that search warrant was valid for that period of time. However, since the can of benzene did not move during that time and, more important, a distinction

*sity, supra,* at 464, the intrusion and searches must be analyzed as warrantless searches.

 Warrantless searches may be valid if they are not "unreasonable". A search is unreasonable if it violates a person's reasonable, legitimate expectation of privacy. The United States Supreme Court has indicated that a reasonable expectation of privacy is determined by a two-pronged test. *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). *Accord, United States v. Bailey, supra,* at 941. First, the defendant must exhibit a subjective expectation of privacy, defined from an examination of the totality of the circumstances. *Rawlings v. Kentucky,* 448 U.S. 98, n.3 at 104, 100 S.Ct. 2556, n.3 at 2561, 65 L.Ed.2d 633 (1980). Second, the expectation must be one that society is prepared to recognize as legitimate, a more objective test. *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).

> Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. One of the main rights attaching to property is the right to exclude others, see W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. Expectations of privacy protected by the Fourth Amendment, of course, need not be based on a common-law interest in real or personal property, or on the invasion of such an interest.... But by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in deter-

mining the presence or absence of the privacy interests protected by that Amendment.

439 U.S. at 144, n.12, 99 S.Ct. at 431, n.12. In undertaking the analysis of each defendant's professed expectation of privacy in this instance, I must bear in mind the admonition of the Supreme Court in its discussion of Fourth Amendment protection:

> [T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

*Katz v. United States, supra,* 389 U.S. at 351, 88 S.Ct. at 511 (citations omitted).

With these precepts in mind, I now turn to each individual defendant's claim.

 I find that Cassity has a reasonable subjective expectation of privacy in his parents' house and, therefore, the garage. Cassity need not have a possessory interest in the house to assert a reasonable expectation of privacy therein, nor does he need to own the chemicals. These are merely factors to consider when determining if a person has established a sufficient interest to be protected pursuant to the Fourth Amendment. A person can have a legally sufficient interest in a place so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place. *Jones v. United States,* 362 U.S. 257, 263, 80 S.Ct. 725, 732, 4 L.Ed.2d 697 (1960). Cassity testified that he had resided with his parents for twenty to twenty-five years at the Stair Street address. He has reason to expect that his parents' home and, correspondingly, his own interest in it would remain protected from unreasonable searches in the absence of exigent circumstances or consent. *See United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39

drawn between the beeper in the benzene can and the other two beepers would have no practical effect in light of my decision in this case, I

will address the issues in the beeper searches categorically.

L.Ed.2d 242 (1974). Similarly, Cassity's expectation of privacy is legitimate. Possession of the chemicals was not illegal since they are not contraband *per se. See United States v. Bailey, supra.* Likewise, they were not being used for an illegal purpose nor was there probable cause at the time of the intrusion to suspect Cassity of participation in a conspiracy to manufacture and distribute amphetamines. There is no evidence of consent to search the garage by any member of the family nor is there evidence of exigent circumstances that would justify a warrantless intrusion. I find that Cassity has demonstrated a reasonable and legitimate expectation of privacy in the garage.

■ Defendant Sword contends that he had a reasonable expectation of privacy in a quadruplex that he shared with his girlfriend and three other persons. The government argues that Sword had no such expectation since he never admitted ownership or knowledge of the cans and there was no evidence that he stored the cans in a "protected" area of the house.

Absent consent or exigent circumstances, entry into a person's home to conduct a search has consistently been held to be unreasonable under Fourth Amendment protections unless it is conducted pursuant to a warrant. *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). The degree to which Fourth Amendment protections are extended to apartments and shared dwellings is less certain. The Court of Appeals for the Sixth Circuit has held, however, that tenants have the same expectation of privacy in their apartments as homeowners in their houses. *United States v. Carriger,* 541 F.2d 545, 550–552 (6th Cir. 1976). The Court referred to *McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), and *Fixel v. Wainwright,* 492 F.2d 480 (5th Cir. 1974), when it held:

"But it seems to me [Jackson, J., concurring] that each tenant of a building, while he has no right to exclude from the common hallways those who enter lawfully, does have a personal and constitutionally protected interest in the integrity and security of the entire building against unlawful breaking and entry...."
[*McDonald v. United States*], 335 U.S. at 458–59, 69 S.Ct. at 194–195.

... The officer's entry into this locked apartment building without permission and without a warrant of any kind was an illegal entry and violated appellant's Fourth Amendment rights. Accordingly, the evidence obtained as a result of the unauthorized entry should have been suppressed.

. . . . .

... [T]here can be no difference in the tenant's subjective expectation of privacy, and no difference in the degree of privacy that the Fourth Amendment protects.

. . . . .

"Contemporary concepts of living such as multi-unit dwellings must not dilute Fixel's right to privacy any more than is absolutely required...."
[*Fixel v. Wainwright*], 492 F.2d at 484 (footnote omitted).

541 F.2d at 550–552. Similarly, though less directly, the United States Supreme Court in *Jones v. United States, supra,* 362 U.S. at 266, 80 S.Ct. at 733, sanctioned the protection of the Fourth Amendment rights for apartment dwellers and others by refusing to distinguish among terms of such "gossamer strength" as lessee, licensee, invitee and guest.

The tenets expressed in these cases clearly support defendant Sword's claim. It is irrelevant that Sword lived in an apartment. Moreover, the fact that the rooms were shared with four other persons is of no significance. Homeowners may reside in houses with others and expect no less privacy than if they resided alone. I find no reason to hold that apartment dwellers have any less expectation of privacy. In either case the principal resident—homeowner or lessee—risks the consent of anoth-

er resident to a search of the home. *See, e. g., United States v. Matlock, supra,* (a third person, other than the defendant, may give valid consent to search the defendant's premises or effects if that third person has common authority over them). *Accord, United States v. Sumlin,* 567 F.2d 684 (6th Cir. 1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). In that instance, there would be no reasonable subjective expectation of privacy. In this case no such consent was given. Rather the testimony elicited from Sword at the evidentiary hearing indicates that only those persons who obtained permission from Sword or his friend could gain entry to the basement where the chemicals were stored. Furthermore, Sword also maintained a legitimate expectation of privacy. The chemicals were not contraband *per se* and the possession of them, absent probable cause to link them and their owner with a specific drug-manufacturing scheme, is not illegal. *United States v. Bailey, supra,* at 944. There is no evidence that the government obtained consent to search the quadruplex from an occupant and there is no independent evidence to indicate that Sword participated in the overall drug conspiracy at the time that the beepers were monitored in the quadruplex. Therefore I hold that the monitoring of the beepers at 1494 Calvary violated Sword's reasonable and legitimate expectation of privacy.

■ Stephen Lenk contends that he had a reasonable expectation of privacy in the residence of Raymond Dean, particularly in the basement of the house. Lenk was arrested in the basement when it was searched. He had been a guest in the house for several days preceding the search and had his personal effects, including clothing, toiletries, pamphlets, formulas, and books, in the basement. Some of these items were contained in a duffel bag that was searched.

The government counters that Lenk did not have any expectation of privacy because he did not own the house and because there is no legitimate expectation of privacy in a clandestine laboratory. The latter argument is based on *United States v. Clay-*borne, 584 F.2d 346, 348 (10th Cir. 1978). It is also argued that the search of the house was conducted pursuant to a valid search warrant.

I cannot agree with the government's position in this instance. The concepts of possession or ownership are not the tests for Fourth Amendment protections any more than is the concept of "legitimately on the premises". *See Rakas v. Illinois, supra,* 439 U.S. at 143–48, 99 S.Ct. at 430–33. Indeed, the *Rakas* decision implies that there are circumstances in which a visitor could object to a search of a house.

> For example, applied literally, this statement [legitimately on the premises] would permit a casual visitor who has never seen, or been permitted to visit, the basement of another's house to object to a search of the basement if the visitor happened to be in the kitchen of the house at the time of the search.... The ... visitor would have absolutely no interest or legitimate expectation of privacy in the basement ... and it advances no purpose served by the Fourth Amendment to permit ... [him] to object to the lawfulness of the search.[11]

> _____
> [11] This is not to say that such visitors could not contest the lawfulness of the seizure of evidence or the search if their own property were seized during the search.

439 U.S. at 142 & n.11, 99 S.Ct. at 430 & n.11. Furthermore, although the court in *Rakas* rejected the automatic standing doctrine of *Jones v. United States, supra,* it recognized that Jones had a legitimate expectation of privacy that permitted him to assert the protections of the Fourth Amendment. *Rakas, supra,* at 149, 99 S.Ct. at 433. Lenk's claim is analogous to that of Jones. Both had permission to use the premises although they did not pay rent for its use, both had short visits, both kept personal belongings at the visited residence, and both were free to enter and leave as they desired. Lenk clearly was more than a casual visitor. The testimony at the evidentiary hearing indicates that he had been a guest for at least two days and that he was expected to stay for an indeterminate

period of time. The testimony also indicates that Lenk subjectively expected Dean's home, and thereby his own personal belongings in the house, to be free from warrantless governmental intrusion.

Similarly, Lenk has a legitimate expectation of privacy akin to that of Jones. Both had permission to use the premises without restriction. The court in *Jones* held that "wrongful" presence at the scene of the search would preclude the legitimacy of the expectation. *Jones, supra*, 362 U.S. at 267, 80 S.Ct. at 734. However, implied in the term "wrongful", as used by the court in *Jones* and *Rakas*, is not the legality of the *use* of the place searched but the *occupancy* of the place.[3] See *Rakas, supra*, 439 U.S. at 141 n.9, 99 S.Ct. at 429 n.9. If one recalls that the Fourth Amendment protects "persons, not places", the logic of the analysis is obvious.

■ I am not persuaded by the government's assertion that a clandestine laboratory is not within the scope of the Fourth Amendment protections pursuant to *United States v. Clayborne, supra*. With due respect, I conclude that such reasoning is reverse logic—one uses the fruits of an illegal search to justify its legality. The Fourth Amendment specifically requires probable cause to precede the search and it is not to be discovered as the result of one.[4]

The government contends that the evidence seized as a result of the search of the basement is admissible because the monitoring of the house began before Lenk arrived and a warrant was obtained for the search of the house.[5] The monitoring was done at all times without a warrant. The government argues that the surveillance of the Hanson Street residence has not been taint-

ed by the previous monitoring of the beepers at the other addresses. It relies for this contention on *United States v. Stephenson* :

> In the instant case the beeper surveillance evidence within the house and that within the laboratory *do not come together as one connected transaction. The agents lost contact with the device following the movement from the house.* An independent effort was necessary to establish contact. So the laboratory contact is not tainted by the surveillance within the house.

490 F.Supp. 619 at 624 (D.C.1979) citing *United States v. Clayborne, supra*, at 349–50 (emphasis supplied in *Stephenson* ). Underlying this reasoning is the premise that there was no expectation of privacy in a clandestine laboratory.

■ I find two flaws in this argument. First, I previously stated that discovery of a clandestine laboratory as the result of a warrantless search is insufficient to justify the initial intrusion. Hence I do not agree that the mere interruption of beeper surveillance is enough to purge the taint of the initial warrantless search, *see Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), since both the laboratory and the homes in this case are subject to Fourth Amendment protections. Second, the presence or absence of an individual from the premises cannot be used to validate an otherwise illegal search. I must presume that Dean expected his home to be free from warrantless intrusions by the government. Lenk maintained a legitimate expectation of privacy in the Hanson Street residence for the reasons that I have previously discussed. A guest may risk his host's consent to governmental searches just as an individual who shares his fulltime residence

---

**3.** This does not imply that all legitimate occupants of a residence have a right to challenge a search. *See, e.g., Northern v. United States*, 455 F.2d 427 (9th Cir. 1972); *United States v. Tussell*, 441 F.Supp. 1092 (M.D.Pa.1977).

**4.** This requirement is one of the principal reasons for sustaining the need for administrative warrants. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930

(1967); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

**5.** Again it is worth noting that Search Warrant No. 780927, authorizing the search of 6344 Hanson Street in Detroit, contained no termination date. However, the Court of Appeals did not address the legality of that warrant and my conclusions do not necessitate a ruling on its validity.

with others may so do. *See United States v. Matlock, supra.* Yet in the absence of proof of such consent I cannot presume that Lenk had a diminished expectation of privacy merely because he arrived several days after an initial illegal surveillance began.

■ Terry Hines argues that he has a reasonable expectation of privacy in the rented van in which the benzene and heating mantle were transported. The van was rented by the government, the items were placed in the rear of the van by Drug Enforcement Agency ("DEA") special agents and Hines testified that he had no knowledge that the chemicals or heating mantle were present in the van because of the manner in which the rear compartment was constructed.

■ The test that I must use to determine Hines' reasonable expectation of privacy combines the question of "standing" to challenge the search and the substantive claim of a legitimate expectation of privacy into whether governmental officials violated any legitimate expectation of privacy held by petitioner. *Rawlings v. Kentucky, supra,* 448 U.S. at 106, 100 S.Ct. at 2562. Only those persons whose Fourth Amendment rights have been violated are entitled to the protection of the exclusionary rule. *United States v. Salvucci,* 448 U.S. 83, 86, 100 S.Ct. 2547, 2550, 65 L.Ed.2d 619 (1980); *Rakas, supra,* 439 U.S. at 134, 99 S.Ct. at 425. Hines has stated that he expected the van to be free from governmental intrusion, i.e., he exhibited a subjective expectation of privacy.

I find Hines' position untenable. It is helpful to analyze subjective expectations of privacy in terms of the pre-*Rakas* notions of "standing" with relation to Fourth Amendment rights.

An individual has standing to sue if the challenged action has caused him injury in fact and the injury was to an interest "arguably within the zone of interests to be protected" by the violation. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973); *Association of*

*Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Obviously, a potential conviction will inure harm to Hines. However, it is difficult for me to understand Hines' contention that he is within the zone of Fourth Amendment protection.

■ The Fourth Amendment protects an individual from unreasonable searches or seizures. It also protects the *individual* and not the *locus* of the search or seizure. *See Katz v. United States, supra.* Therefore, Hines must expect to be protected, not just blithely exist in an insular environment. An individual normally and overtly manifests expectations of privacy in certain aspects of his daily life. He does not expect his telephone to be tapped nor his bedroom to be bugged. A closed compartment generally may be assumed to contain items not intended for general knowledge. An individual's car, however, is not subject to the same expectations because its contents are generally open to view and it is inherently mobile. *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *United States v. Martinez-Fuerte,* 428 U.S. 543, 561, 96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116 (1976); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). A car that does not belong to an individual but is either rented or loaned to him may be subject to even a lesser degree of privacy. *See United States v. McConnell,* 500 F.2d 347 (5th Cir. 1974), cert. denied, 420 U.S. 946, 95 S.Ct. 1327, 43 L.Ed.2d 424 (1975).

In *McConnell,* the Court of Appeals held that the defendant lacked standing to contest a search of a rented automobile. Defendant, an alleged wholesale marijuana distributor, rented the car to facilitate the transportation of marijuana by a third person. He was convicted on evidence seized during a search of the car when he was not a driver or passenger. The Court summari-

ly dismissed the appeal from denial of the motion to suppress the evidence, holding that the search was not directed against the defendant nor did he show that he had a reasonable expectation of privacy with respect to the rented vehicle.

The relationship between Hines and the van in this instance is even more attenuated than in *McConnell.* Hines did not rent the vehicle, the government did. He testified that his only purpose in driving the van was to move it from one parking lot to another. He also attested to the fact that he did not know that there were chemicals or a heating mantle within the van. It is inconceivable that any person having such a transient interest in a vehicle can manifest a subjective or legitimate expectation of privacy.[6] Hence I hold that the search of the vehicle was not a violation of Hines' Fourth Amendment rights.

### III.

Defendants urge suppression of the evidence seized from 6344 Hanson as fruits of an illegal search. I have concluded that Hines showed no reasonable expectation of privacy in the van and, therefore, the evidence seized as a result of beeper monitoring should not be suppressed as "fruits of the poisonous tree" as to Hines. *Wong Sun v. United States, supra,* 371 U.S. at 491–92, 83 S.Ct. at 419. The remaining defendants, Cassity, Sword and Lenk, have asserted that the same evidence should be suppressed.[7] I need not reach this issue for the reasons set forth in Part IV. of this opinion.

### IV.

■ Having decided that Cassity, Sword and Lenk have demonstrated a reasonable expectation of privacy in the various locations where a beeper was monitored, I now must decide if I should grant the motion to suppress with regard to the evidence seized at 6344 Hanson.

The Court of Appeals stated that "if either the installation or the monitoring of the beeper violated the defendant's legitimate expectations of privacy, the court *ordinarily* should grant the motion to suppress." *United States v. Cassity, supra,* at 465 (emphasis added). Although the Court of Appeals has decided that the analysis in *Bailey* should be undertaken to determine the defendants' Fourth Amendment rights, and I have done that, my decision on the suppression motion also turns on the application of the exclusionary rule. The illegal searches in this case took place during July and August, 1977. In *Bailey,* the beepers were monitored almost a full year later. The decision in *Bailey* was not rendered until July 31, 1980, three years after the illegal monitoring in this case took place. Therefore, application of the exclusionary rule in this case will make *Bailey* retroactive. I have reviewed numerous cases discussing retroactive application of the exclusionary rule and, for the following reasons, I decline to apply the rule in this case.

■ The purpose of the exclusionary rule is two-fold—to deter future illegal police conduct and to assure judicial integrity. It is not to redress or make whole the injury to the privacy of the search victim.

> [T]he ruptured privacy of the victims' homes and effects cannot be restored. Reparation comes too late.

*Linkletter v. Walker,* 381 U.S. 618, 637, 85 S.Ct. 1731, 1742, 14 L.Ed.2d 601 (1965).

> The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.

*Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960).

---

**6.** I distinguish this case from the instance of passengers in a vehicle. *See, e.g., Rios v. United States,* 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); *United States v. Tolbert,* 517 F.Supp. 1081 (E.D.Mich.1981). In both cases, the passengers expressed a more tangible interest in the vehicle and its contents.

**7.** Defendant Lenk also challenges the legality of the search of his parachute bag, in which the formulae and procedures for the synthesis of amphetamines were discovered. This issue was not addressed by the Court of Appeals and I find it unnecessary to resolve the issue at this time.

In sum, the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.

*United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1973).

▬▬▬▬▬ The application of the exclusionary rule as a prospective remedy has evolved away from traditional Blackstonian notions that judges discover the law that has always been in existence and do not create new law.[8] The Constitution does not specifically provide for the retroactive or nonretroactive application of any of its clauses or protections. *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). However, constitutional rules of criminal procedure may be made "prospective ... where the exigencies of the situation require such an application." *Johnson v. New Jersey, supra*, at 726–27, 86 S.Ct. at 1777; *Tehan v. U.S. ex rel. Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); *Linkletter v. Walker, supra*. The criteria to be used in the determination of retroactive application is based on the purpose to be served by the new standards, the extent of reliance by law enforcement officers on the old standards, and the effect on administration of justice of the new standards. *Stovall v. Denno*, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967); *Linkletter v. Walker, supra. Accord, United States v. Black*, 480 F.2d 504 (6th Cir. 1973). The most important factor in this trio is the purpose to be served by the new standard.

> [If the purpose] is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given completely retroactive effect.

*Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971).

*See also Ivan V. v. City of New York*, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972); *United States v. Black, supra*, at 509.

The purpose of the imposition of the exclusionary rule in *Bailey* was based on the holding that beeper surveillance of non-contraband personal property in private areas "trenches upon legitimate expectations of privacy". *Bailey, supra*, at 944. Hence, a warrant that included a "reasonable" termination date is required to protect the defendants' Fourth Amendment rights. *Bailey, supra*, at 945–46. In applying the *Williams* test, *supra*, I find that exclusion of evidence gained through illegal searches does not enhance the fact-finding process at trial but, instead, curtails it by permitting the alleged victim of an illegal search to suppress its admission. Neither does the rule requiring a warrant with a reasonable termination date question the accuracy of guilty verdicts in the past. Evidence obtained from beeper monitoring without a warrant could only serve to confirm the other evidence used to convict a defendant. Illegally gained evidence is rarely suppressed if it has no bearing on the outcome of a trial. Therefore both tests articulated in *Williams* for the first criteria in the application of retroactivity are inapplicable in this case.

The second consideration involves an analysis of the extent to which law enforcement officers relied on old standards. In this case the DEA agents were acting within the boundaries of the law as it was defined by the Supreme Court prior to the searches. Although in the *Bailey* decision the Court of Appeals relies on *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), that case is distinguishable because it involved wiretapping and not beeper surveillance. In *Berger*, the Court invalidated a New York wiretap statute authorizing two-month surveillance periods because each two-month period could be based on a single showing of prob-

---

**8.** *See Kuhn v. Fairmont Coal Co.*, 215 U.S. 349, 372, 30 S.Ct. 140, 148, 54 L.Ed. 228 (1910) (Holmes, J., dissenting). "Judicial decisions have had retrospective operation for nearly a thousand years."

able cause, two-month extensions could be obtained without a new showing, and no termination date was required even though the sought-after conversation was seized. *Accord, United States v. Lamonge*, 458 F.2d 197 (6th Cir.), *cert. denied*, 409 U.S. 863, 93 S.Ct. 153, 34 L.Ed.2d 110 (1972). Wiretapping constitutes an actual invasion into an individual's privacy by monitoring conversations and affirmative actions of an individual. *See Katz v. United States, supra.* However, beepers have often been construed as extensions of visual surveillance that enhance the physical senses of law enforcement officers. *United States v. Dubrofsky*, 581 F.2d 208, 211 (9th Cir. 1978); *United States v. Moore*, 562 F.2d 106, 112 (1st Cir. 1977), *cert. denied sub nom. Bobisink v. United States*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978). Analogies may also be drawn to the use of pen registers and card drops, both of which determine the numbers of outgoing calls by recording devices without monitoring the content of the calls. These devices are not prohibited under Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–20, since the "device does not hear sound and therefore does not accomplish any 'interception' of wire communications as that term is defined by 18 U.S.C. § 2510(4)." *United States v. Giordano*, 416 U.S. 505, 553–54, 94 S.Ct. 1820, 1844–45, 40 L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part); *United States v. New York Tel. Co.*, 434 U.S. 159, 165–168, 98 S.Ct. 364, 368–370, 54 L.Ed.2d 376 (1977); *Michigan Bell Tel. Co. v. United States*, 565 F.2d 385, 388 (6th Cir. 1977). The courts in *New York Telephone* and *Michigan Bell Telephone* did hold, however, that the searches were subject to Fourth Amendment protective requirements. Neither case specified time limitations that would be considered reasonable, although the warrant in *Michigan Bell* contained a twenty-day maximum and the warrant in *New York Telephone*

was extended an additional twenty days past its twenty-day limit. Nor, was there any indication that a time limit was necessary.[9] The Court of Appeals in *Bailey* did not offer any further guidance on the issue of time limitations than any prior decision, holding only that "reasonable" time limits were required based, in part, on Judge Churchill's interpretation of federal statutory authority implementing the Fourth Amendment. Yet Judge Churchill based his reasoning on the Omnibus Crime Control and Safe Streets Act, *see Bailey*, 465 F.Supp. 1138 (E.D.Mich.1979), which is of questionable authority in cases pertaining to beepers as indicated by the telephone monitoring cases. He further interpreted Fed.R.Crim.P. 41(c)(1), limiting a search warrant to ten days, to require an expiration date on all warrants. At most, I would interpret this theory to indicate that the warrant expires in ten days, not that the warrant is entirely invalid.

I find that it was reasonable for the DEA agents to rely on previous standards requiring a search warrant for physical surveillance, such as those articulated in the telephone cases. I also find that it was reasonable for them to have distinguished between monitoring aural conversations as in wiretapping and the physical surveillance of beeper tracking. The agents acted in good faith and obtained warrants for the installation of the beepers. The natural corollary is that the beepers will be monitored. In the absence of any previous analogous beeper searches that have been invalidated, I hold that the agents were justified in their reliance on the old standard and exercised good faith when they secured warrants for the beeper surveillance.

The Supreme Court in *Michigan v. Tucker*, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974), held:

**9.** For example, the Supreme Court stated, "... the requirement of Rule 41(c)(1) that the warrant command that the search be conducted within 10 days of its issuance does not mean that the duration of a pen register surveillance may not exceed 10 days. Thus the District Court's order, which authorized surveillance for a 10-day period, did not conflict with Rule 41." *United States v. New York Telephone Co., supra*, 434 U.S. at 169 n.16, 98 S.Ct. at 371 n.16.

The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused. Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.

417 U.S. at 447, 94 S.Ct. at 2365. Not only are the officers in this case justified in their reliance on the old rule but application of the exclusionary rule would serve little benefit.

The final criteria to apply is whether the decision will affect the administration of justice. Little thought is needed to imagine the increased burden on the courts resulting from evidentiary hearings in each case where beeper surveillance is used. I have some doubt that the outcome of each defendant's trial in this case would be affected by retroactive application, since there was other substantial evidence of guilt, although justice for future defendants would be preserved by prospective application of the new rule.

The United States Supreme Court has summarized the retroactive application of the exclusionary rule in *United States v. Peltier*, 422 U.S. 531, 535, 95 S.Ct. 2313, 2316, 45 L.Ed.2d 374 (1975):

It is indisputable, however, that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the fact-finding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application. *Linkletter v. Walker*, 381 U.S. 618 [, 85 S.Ct. 1731, 14 L.Ed.2d 601] (1965); *Johnson v. New Jersey*, 384 U.S. 719 [, 86 S.Ct. 1772, 16 L.Ed.2d 882] (1966); *Stovall v. Denno, supra; Fuller v. Alaska*, 393 U.S. 80 [, 89 S.Ct. 61, 21 L.Ed.2d 212] (1968); *Desist v. United States*, 394 U.S. 244 [, 89 S.Ct. 1030, 22 L.Ed.2d 248] (1969); *Jenkins v. Delaware*, 395 U.S. 213 [, 89 S.Ct. 1677, 23 L.Ed.2d 253] (1969); *Williams v. United States, supra; Hill v. California*, 401 U.S. 797 [, 91 S.Ct. 1106, 28 L.Ed.2d 484] (1971).

We think that these cases tell us a great deal about the nature of the exclusionary rule, as well as something about the nature of retroactivity analysis. Decisions of this Court applying the exclusionary rule to unconstitutionally seized evidence have referred to "the imperative of judicial integrity," *Elkins v. United States*, 364 U.S. 206, 222 [, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669] (1960), although the Court has relied principally upon the deterrent purpose served by the exclusionary rule. (Citations omitted).

When it came time to consider whether those decisions would be applied retroactively, however, the Court recognized that the introduction of evidence which had been seized by law enforcement officials in good-faith compliance with then-prevailing constitutional norms did not make the courts "accomplices in the willful disobedience of a Constitution they are sworn to uphold." *Elkins v. United States, supra*, at 223 [, 80 S.Ct. at 1447].

. . . . .

The teaching of these retroactivity cases is that if the law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial, the "imperative of judicial integrity" is not offended by the introduction into evidence of that material even if decisions subsequent to the search or seizure have broadened the exclusionary rule to encompass evidence seized in that manner.

422 U.S. at 535–37, 95 S.Ct. at 2316–17. *Accord, United States v. Calandrella*, 605 F.2d 236 (6th Cir.), *cert. denied sub nom. Kaye v. United States*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

 In this case, application of the exclusionary rule will not deter the agents who acted in good faith since *Bailey* serves that purpose, nor will it remedy the harm that has accrued to the victims of the search. In *Desist v. United States, supra,* 394 U.S. at 254 n.24, 89 S.Ct. at 1036 n.24, the Supreme Court stated, "[W]e simply decline to extend the court-made exclusionary rule to cases in which its deterrent purpose would not be served." Neither is the integrity of this court questioned because it is not applied. The rule is fashioned by the court but its application is not mandatory where no useful purpose is served. Therefore I decline to apply the exclusionary rule and deny defendants' motion to suppress the evidence seized as a result of the beeper monitoring.

### V.

Defendants Cassity, Sword and Lenk have shown a reasonable, legitimate expectation of privacy in the various addresses through which the precursor chemicals were traced by the beepers. However, I deny their motions to suppress the evidence from the illegal search because no useful purpose would be served by applying the exclusionary rule retroactively. Defendant Hines has no reasonable expectation of privacy in the rented van, and his motion to suppress is denied.

The evidence seized as a result of the beeper surveillance is admissible against all defendants, no new trials are ordered, and their convictions are reinstated.

An appropriate order may issue.

### ORDER DENYING DEFENDANTS' MOTIONS TO SUPPRESS

These matters having come before the Court on motions to suppress evidence seized as the result of monitoring electronic tracking devices ("beepers"), the Court having held an evidentiary hearing on the motions, and the Court being otherwise fully advised in the premises,

IT IS ORDERED that the motions to suppress evidence in the above-entitled case be, and the same hereby are, DENIED.